IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN G. WEIST,<br>        Plaintiff, | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2000 |
| CITY OF PHILADELPHIA, et al.,<br>        Defendants. | : | |
| | : | |
| | : | |
| | : | |

**Memorandum and Order**

YOHN, J.                                                                    January ___, 2008

Plaintiff John G. Wiest[1] filed this action against the City of Philadelphia ("the City"), the

Philadelphia Police Department,[2] and Carole A. Ralph, a Philadelphia police detective,[3] alleging

violations of federal[4] and state law resulting from statements allegedly made to plaintiff by

---

   [1] Plaintiff's last name is misspelled in the caption by the Clerk.  In this memorandum, I
use the correct spelling, Wiest (*see* Wiest Dep. 5:7), and I will direct the Clerk to correct the
caption.

   [2] In the memorandum of law in support of their motion for summary judgment,
defendants point out that the Philadelphia Police Department is not a legal entity separate from
the City of Philadelphia and that the Philadelphia Police Department cannot be directly sued.
(Defs.' Mem. Supp. Mot. Summ. J. 3 (citing 53 Pa. Cons. Stat. § 16257 and *Baldi v. City of
Phila.*, 609 F. Supp. 162, 168 (E.D. Pa. 1985).)  Plaintiff has not contested these assertions, so
the caption will be changed to reflect the proper parties, and the Philadelphia Police Department
will be dismissed as a party.

   [3] Since this lawsuit commenced, Ralph has retired from her position in the Philadelphia
Police Department and is no longer a police detective.  (*See* Ralph Dep. 37:17-19.)  For ease of
identity, however, I refer to her here as "Detective Ralph."

   [4] Only part of one of plaintiff's eleven claims against Detective Ralph and part of one of
plaintiff's seven claims against the City allege a federal violation.

Detective Ralph at a Philadelphia hospital after the death of plaintiff's wife.  Defendants now

move for summary judgment.  For the reasons explained below, I will grant defendants' motion

for summary judgment on plaintiff's federal-law claims, and I will remand plaintiff's state-law

claims.  *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).


I.      **Factual Background**

In the evening of March 3, 2006, plaintiff arrived at his home in Philadelphia to find his

wife, Ann Wiest, sitting on the bed appearing confused.  (Wiest Dep. 13:6-12.)  She then

apparently lost consciousness and fell back on the bed.  (*Id.* at 13:13-14.)  Plaintiff called 911

and began performing CPR on his wife.  (*Id.* at 14:18-25.)  Firemen, and then paramedics,

arrived and took her to Nazareth Hospital.  (*Id.* at 15:6-25.)  Shortly after plaintiff and other

family members arrived at the hospital, plaintiff was told his wife had died.  (*Id.* 17:24-18:7.)

Plaintiff, two of his sons, and his mother-in-law then spent thirty minutes to an hour in the room

at the hospital with plaintiff's wife's body, until a nurse asked them to leave while the body was

cleaned.  (*Id.* at 18:15-24.)

Meanwhile, at some point after plaintiff's wife died, a doctor at Nazareth Hospital

reported to the police that the death might be suspicious.  (Ralph Dep. 129:2-6.)  Detective Ralph

was assigned to investigate the death, and she went to the hospital.  (*Id.* at 60:2-7.)  She

introduced herself to the attending physician in the emergency room, and then she went to the

waiting room to interview plaintiff.  (*Id.* at 105:9-12, 139:20-22).

At this point, plaintiff's and Detective Ralph's explanations diverge.  Plaintiff, whose

version must be taken as true for purposes of this motion,[5] asserts that the following exchange

occurred:

> We were in the room, and [the] doctor opened the door and I'm figuring he's going
> to say, okay, you can go back and see her.  He said come in here, we want to talk to
> you.  [Detective Ralph] was there and there was a big cop, . . . the nurse and the
> doctor.
> And [Detective Ralph] was asking me a couple of questions.  I forget what.
> She asked me how old she was . . . . And then she said to me, you know, a 51-year-
> old woman just don't drop dead.
> I said, well, what happened then?  Tell me.
> She said, well, we think you did foul play to her.
> I said, you think I killed my wife?
> And she says, yeah.  I opened the door and I brought my two boys in with me.
> And I said, I want you to repeat it again, and she did.  So then we were
> arguing back and forth.  Nobody said nothing.
> . . . . I don't know how long we were arguing.  And then I said to the doctor,
> well, then, we want to see her again.
> And [Detective Ralph] said to me, you can't see her.  I said, why not?
> She says, because you're going to try to change what you did.

(Wiest Dep. 19:16-20:20.)  Wiest further testified that Detective Ralph told him he was not

permitted to touch his wife's body because he "would try to un[do] what [he] did to her."  (*Id.* at

30:20-21.)

Detective Ralph denies that she told Wiest that she suspected him of foul play in

connection with his wife's death or that she accused him of having engaged in any foul play.

(*See* Ralph Dep. 121:25-126:21.)  In her version of the events, she "sa[id] to [Wiest] that [his

wife] was 51 years old[] and it was an unexplainable death.  We have to find out why she passed,

why she died."  (*Id.* at 108:14-17.)  She "told Mr. Wiest he could not touch the body because it

---

[5] When a court evaluates a motion for summary judgment, "[t]he evidence of the non-
movant is to be believed."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
Furthermore, "all justifiable inferences are to be drawn in [the non-movant's] favor."  *Id.*  Here,
the non-movant is plaintiff; therefore, I must accept plaintiff's version of the facts as true for
purposes of this motion.

was an unexplainable death and she had to be transported to the medical examiner's office for an

autopsy." (*Id.* at 101:10-13.)  She denies that she ever said Wiest could not go into the room

with the body because he "might und[o] what he did." (*Id.* at 104:12-17.)

Ultimately, plaintiff, accompanied by Detective Ralph and the other police officer, was

permitted to return to the room containing his wife's body,[6] and he remained there for ten to

fifteen minutes. (*See* Wiest Dep. 25:23-25, 28:3-4, 30:2-4, 31:22-32:16.)  While there, Wiest

expressed concern about the security of his wife's jewelry and told Detective Ralph he wanted to

take it with him. (*Id.* at 26:2-6, 29:3-19, 49:22-50:15.)  Detective Ralph told him he could not

take the jewelry because he could not touch the body, but she gave him one of her business cards

and told him to call her if there were any problems involving the jewelry. (*Id.* at 40:16-41:7,

50:9-18.)  After arguing about the jewelry, plaintiff left the room, and then he and his sons left

the hospital. (*Id.* at 15-21.)

As a result of the statements allegedly made by Detective Ralph at the hospital, Wiest was

not physically injured. (*Id.* at 43:5-6, 47:12-16.)  He denied suffering physiological injuries or

damage to his reputation. (*Id.* at 43:18-22, 44:2-4.)  When asked by his own attorney, he testified

that he suffered emotional distress for about five months, but he did not see a doctor, he received

no treatment or counseling, and he took no medicine as a result of the incident. (*Id.* at 43:20-25,

46:8-15, 47:8.)  He did not lose any wages, and he suffered no direct financial losses. (*Id.* at

---

[6] Detective Ralph testified that, after she explained to Wiest that he could not see or touch his wife's body because the death was unexplained, he was "very devastated." (Ralph Dep. 105:13-16.)  As a result, when she had finished collecting the information she needed to make her report, she "call[ed] the medical examiner's office and asked if [Wiest] could go into the room and see his wife." (*Id.* at 105:17-21.)  The medical examiner's office assented, so Detective Ralph went back to the family room and agreed to take Wiest and his two sons, one at a time, into the room to see the body. (*Id.* at 105:22-106:106.)

44:22-24, 45:11-14.)

After the incident, Wiest did not tell anyone at the hospital what had happened.  (*Id.* at

50:19-25.)  He did not call Detective Ralph's supervisor to complain, and he did not submit a

complaint against Detective Ralph to the police department.  (*Id.* at 39:22-25, 40:7-10).  He filed

the instant lawsuit on May 4, 2007 in the Court of Common Pleas of Philadelphia County.

Defendants removed the suit to this court on May 16, 2007.

Liberally construed, Count I asserts claims against Ralph for defamation, slander and/or

libel; negligence; loss of consortium; intentional and/or negligent infliction of emotional distress;

failure to investigate properly the death of plaintiff's wife; and a deprivation of plaintiff's

(unspecified) state and/or federal constitutional rights.  Count II asserts claims against the City

for failure to supervise, to train, and to institute procedures that require police officers to comply

with the state and federal constitutions, and for engaging in the systematic violation of the

constitutional rights of the public in general and of plaintiff, specifically.

In their memorandum of law in support of their motion for summary judgment,

defendants argue, inter alia, that Wiest has failed to allege or support any violation of the federal

constitution.  Plaintiff, in his reply, finally identifies the federal constitutional rights allegedly

violated, asserting Fourteenth Amendment due process rights "to be free to see and grieve over

the body" and "to be free from the abusive police procedures employed by Detective Ralph."

(Pl.'s Mem. Contra Defs.' Mot. Summ. J. 4.)  Defendants filed a response addressing these

alleged rights.

## II.     Standard of Review

A motion for summary judgment will be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986) (quoting Fed. R. Civ. P. 56(e)). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Lebatt, Ltd.* 90 F.3d 737, 743 (3d Cir. 1996) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)). The non-movant must present concrete evidence supporting each essential element of its claim. *Celotex*, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III.    Federal Constitutional Claims

Wiest presumably brings his federal constitutional claims against Detective Ralph and the

City pursuant to 42 U.S.C. § 1983.  "In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:  (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred."  *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).  Unquestionably, the conduct complained of was committed by persons acting under color of state law.  *See Monroe v. Pape*, 365 U.S. 167, 187 (1961), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The second essential element—whether defendants' alleged conduct, if true, violates plaintiff's constitutional rights—is disputed.

### A.  Claims Against Detective Ralph

Wiest alleges that Detective Ralph violated his Fourteenth Amendment due process rights "to be free to see and grieve over the body" and "to be free from the abusive police procedures employed by Detective Ralph." (Pl.'s Mem. 4.)  He alleges that defendants' conduct was impermissible; he does not challenge the adequacy of any procedure.  Therefore, I examine Wiest's claims under the substantive due process prong of the Fourteenth Amendment.  "The core of due process is the protection against arbitrary governmental action."  *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).  "The substantive component of the Due Process Clause

limits what government may do regardless of the fairness of procedures that it employs, and

covers government conduct in both legislative and executive capacities." *Id.* Substantive due

process protects those interests that are "so rooted in the traditions and conscience of our people

as to be ranked as fundamental." *Reno v. Flores*, 507 U.S. 292, 302-03 (1993).

To succeed on a claim for violation of substantive due process under the Fourteenth

Amendment, a plaintiff must prove "that a protected property or liberty interest was at stake,"

"that the defendants had a duty of care toward the plaintiff," and "that a deprivation within the

meaning of the Due Process Clause occurred." *Fagan v. City of Vineland*, 22 F.3d 1296, 1310

(3d Cir. 1994) (en banc). The Supreme Court has repeatedly held that "the substantive

component of the Due Process Clause is violated by executive action only when it 'can properly

be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Lewis*, 523 U.S.

at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)). "[T]he due process

guarantee does not entail a body of constitutional law imposing liability whenever someone

cloaked with state authority causes harm." *Id.* at 848. Negligence is never enough for liability;

instead, "conduct intended to injure in some way unjustifiable by any government interest is the

sort of official action most likely to rise to the conscience-shocking level." *Id.* at 849. "Whether

executive action is conscience shocking . . . depends on the context in which the action takes

place." *Schieber v. City of Phila.*, 320 F.3d 409, 417 (3d Cir. 2003).

### 1.      Right to Be Free to See and Grieve over the Body

Plaintiff provides no legal support for his contention that the Fourteenth Amendment's

Due Process Clause protects a property or liberty interest in immediately viewing and grieving

over the body of a deceased spouse when a police investigation intervenes.  This court can find

no decision on record recognizing a liberty or property interest in viewing or grieving over a

body under these circumstances (i.e., when there is no claim that the spouse's interest in

possession of the body for burial is implicated, *see generally* 22A Am. Jur. 2d *Dead Bodies* § 17

(2007) (describing the right of the next of kin to control a body's disposition)).  The Supreme

Court itself "has always been reluctant to expand the concept of substantive due process because

guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."

*Collins*, 503 U.S. at 125.  Furthermore, plaintiff has not provided this court with a compelling

argument for finding a substantive due process right to view and grieve over the body of one's

deceased spouse immediately after the unexplained death of the spouse, a fifty-one year old

woman whose death the police felt necessitated some investigation.  Therefore, I will not find

that such a liberty or property interest protected by the Fourteenth Amendment exists.  Because

Wiest has not alleged a constitutional violation, he fails to state a claim pursuant to § 1983.

Moreover, Wiest was, in fact, permitted to view and grieve over his wife's body at the

hospital shortly after the initial denial.  (*See* Wiest Dep. 25:23-25, 28:3-4, 30:2-4, 31:22-32:16.)

Wiest does not point to any evidence to counter this fact.  On this issue, defendants have

established that no genuine issue of material fact exists by pointing to Wiest's own testimony,

and Wiest has not presented "specific facts showing that there is a genuine issue for trial,"

*Matsushita Elec. Indus. Co.*, 475 U.S. at 585 n.10.  For this reason, too, I will grant defendants'

motion for summary judgment on this issue.

## 2.    Right to Be Free from Abusive Police Procedures

Wiest also provides no legal support for his assertion that Detective Ralph's conduct

violated a due process right "to be free from the abusive police procedures employed by

Detective Ralph."  (Pl.'s Mem. 4.)  Taking Wiest's version of the facts as true, he is presumably

referring to her having made "completely unfounded and baseless accusations against the

grieving husband of a deceased spouse simply because she is fishing for incriminating evidence."

(*Id.*)

The Fourteenth Amendment's Due Process Clause does not protect individuals from

police officers' baseless accusations.  First, assuming without deciding, *see infra* Part IV, that

Wiest can prevail on his state-law defamation claim, defamation by a police officer does not

violate the substantive portion of the Due Process Clause.  *See Boyanowski*, 215 F.3d at 401-02

(citing *Paul v. Davis*, 424 U.S. 693 (1976), and *Siegert v. Gilley*, 500 U.S. 226 (1991), for the

proposition that "defamation by itself d[oes] not harm a 'liberty' interest protected under the

Fourteenth Amendment").

Second, mere verbal threats or accusations of the type alleged to be at issue here are

insufficient to constitute a violation of the Fourteenth Amendment's due process protections.

*See, e.g.*, *Koorn v. Lacey Twp.*, 78 F. App'x 199, 204 (3d Cir. 2003) (citing cases);[7] *Bender v.*

---

[7] *Koorn* cites *Cruz-Erazo v. Rivera-Montanez*, 212 F.3d 617, 622-24 (1st Cir. 2000),
which held that police officers' verbal threats and repeated harassment, which were not
physically intrusive or violent and did not "strike at the basic fabric"—namely, love, trust, and
faith—of a protected relationship, did not "shock the conscience."  It also cites *Collins v. Cundy*,
603 F.2d 825, 827 (10th Cir. 1979), which held that "[v]erbal harassment or abuse of the sort
alleged in this case[, i.e., claims that the sheriff laughed at and threatened to hang the § 1983
plaintiff,] is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."  Thirdly,
it cites *Shabazz v. Cole*, 69 F. Supp. 2d 177, 200 (D. Mass. 1999), which held that, "[w]ithout
even a suggestion of physical injury, [a state prison librarian's] verbal abuse and racial epithets,

*Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983. '[A]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.'" (quoting *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)) (some internal quotation marks omitted)); *Pittsley v. Warrish*, 927 F.2d 3, 7 (1st Cir. 1991) (holding that "[a]s despicable and wrongful as it may have been, the single threat made by the officers [to the accused's young children] is not sufficient to 'shock the conscience'"); *cf. Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998) (construing the plurality opinion in *Albright v. Oliver*, 510 U.S. 266 (1994), to imply that "prosecution without probable cause is not, in and of itself, a constitutional tort," and that "a plaintiff asserting a malicious prosecution claim must show some deprivation of liberty consistent with the concept of 'seizure'" (citing *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995)) (some internal quotation marks omitted)).

During the alleged confrontation with Detective Ralph, Wiest was not in custody or threatened with arrest, he was not physically threatened, and he does not allege that he reasonably feared brutality. Wiest does not allege conduct on the part of Detective Ralph that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Again, because Wiest has not alleged a constitutional violation, he fails to state a claim pursuant to § 1983. Therefore, I will grant defendants' motion for summary judgment on this issue.

---

although continuing for a long period of time, fall short of conscience shocking conduct."

B.       **Claims Against the City of Philadelphia**

Wiest alleges that the City of Philadelphia failed to supervise, direct, control, and train its

police officers; failed to implement and maintain procedures pertaining to the hiring,

disciplining, and training of its police officers; and engaged in the systematic violation of the

constitutional rights of the public in general and of Wiest in particular.  (Compl. ¶ 22.)

Defendants argue that Wiest fails to establish any federal constitutional claims against the City

because he can neither demonstrate the existence of a constitutional violation nor show a causal

link between a violation and the City's policy or custom.  (Defs.' Mem. 11.)  Plaintiff then

asserts in response, without citation to the record, that a genuine issue of material fact exists as to

whether Detective Ralph's alleged violations of Wiest's constitutional rights resulted from a

municipal policy or custom.  (Pl.'s Mem. 4.)

In a suit against a municipality based on § 1983, "the municipality can only be liable

when the alleged constitutional transgression implements or executes a policy, regulation or

decision officially adopted by the governing body or informally adopted by custom." *Beck v.*

*City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658).  Like all §

1983 claims, however, the City's liability depends on a threshold determination that a reasonable

jury could find that a constitutional deprivation has occurred.  *See Baker v. McCollen*, 443 U.S.

137, 140 (1979).  Where there is no violation of a plaintiff's rights under the Constitution, there

can be no municipal liability pursuant to § 1983.  Because Wiest has failed to demonstrate that a

reasonable fact-finder could conclude that he suffered a deprivation of a constitutional right at

the hands of Detective Ralph, as discussed in detail above, I need not determine whether these

alleged deprivations were "visited pursuant to governmental custom" or resulted from "a policy

statement, ordinance, regulation, or decision officially adopted and promulgated" by the

municipality.  *See Monell*, 436 U.S. at 690-01.

Nevertheless, even if Wiest had asserted and proved the violation of a cognizable

constitutional right by Detective Ralph, his claims against the City would still fail.  A municipal

entity can be held liable for a plaintiff's alleged constitutional deprivations only if a causal link

between a policy or custom and the plaintiff's alleged deprivations exists.  *Brown v. Muhlenberg*

*Twp.*, 269 F.3d 205, 214-15 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385

(1989)).  Generally, a policy or custom can be demonstrated by the existence of a formal policy

statement, decision, or regulation; a persistent practice that gives the custom the force of law; or

an action by an official who has final policymaking authority.  *Id.* at 215 (citations omitted).  The

official policy or custom may also be shown by a failure to train.  *Id.* (citation omitted).  Thus, in

order for the City to be liable under § 1983, Wiest must provide evidence from which a

reasonable jury could find that the actions of the City or its employees that deprived Wiest of his

federally protected due process rights resulted from policy or custom or were done by employees

who had final policymaking authority.

Wiest asserts that the City permitted Detective Ralph to remain a member of the

Philadelphia police force and transferred her from one precinct to another instead of "employing

the correct measures to retrain" Detective Ralph and "ensur[ing] her compliance with proper

police procedures and constitutional constraints."  (Pl.'s Mem. 5.)  Wiest contends this

demonstrates an unconstitutional policy or an unconstitutional failure to train.  Wiest's evidence

(solely in the form of Wiest's and Detective Ralph's deposition testimony), however, only

establishes that Detective Ralph was transferred several times over the course of her thirty-year

career with the Philadelphia Police Department.  (*See* Ralph Dep. 21:17-37:19.)  She testified

that she transferred to the extent she did because she could; the transfers were her choice.  (*Id.* at

33:16-20.)  No evidence in the record suggests that Detective Ralph was transferred for any other

reason.  Wiest has provided no evidence—not even a scintilla of evidence—beyond his bare

allegations that Detective Ralph was transferred for an invidious reason.  Therefore, even if

Wiest had sufficiently alleged a violation of his constitutional rights by Detective Ralph, the City

could not be held liable under § 1983.


**IV.    State-Law Claims**

Wiest also alleges violations of state law.  The only basis for the court's jurisdiction over

these claims is that of supplemental jurisdiction, as set forth in 28 U.S.C. § 1367.  Under §

1367(a), "in any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution."  Pursuant to § 1367(c)(3), however, "[t]he

district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a)

if . . . the district court has dismissed all claims over which it has original jurisdiction."  Here, I

will grant judgment in favor of defendants on all of Wiest's federal claims, and I will use my

discretion to decline the exercise of supplemental jurisdiction over the state-law claims.

Accordingly, I will remand the state-law claims to the Court of Common Pleas of Philadelphia

County.

**V.     Conclusion**

Because Wiest has failed to identify a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause that was infringed by Detective Ralph's alleged actions and accusations, Wiest fails to state a claim under § 1983.  Therefore, I will grant defendants' motion for summary judgment as to Wiest's federal constitutional claims.

The remaining claims allege only violations of state law and do not provide an independent basis for this court's jurisdiction.  I will therefore remand those claims.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| JOHN G. WEIST,<br>Plaintiff, | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-2000 |
| CITY OF PHILADELPHIA, et al.,<br>Defendants. | : | |
| | : | |
| | : | |
| | : | |

## Order

YOHN, J.

AND NOW, this _____ day of January 2008, upon consideration of defendants' summary judgment motion (Docket No. 6), plaintiff's response thereto, and defendants' reply, IT IS HEREBY ORDERED that:

1.    The Philadelphia Police Department is DISMISSED as a party to this action, and the Clerk shall AMEND the caption in this matter by removing the Philadelphia Police Department as a defendant and by correcting the spelling of plaintiff's (John G. Wiest's) name.

2.    The summary judgment motion of defendants, the City of Philadelphia and Carole A. Ralph, is GRANTED with respect to the federal constitutional claims of plaintiff, John G. Wiest, contained in both Count I and Count II.  Judgment is entered in favor of the City of Philadelphia and Carole A. Ralph on the federal constitutional claims.

3.    The state-law claims of plaintiff, John G. Wiest, contained in both Count I and Count II are REMANDED to the Court of Common Pleas of Philadelphia County.

4.      The Clerk shall CLOSE this case statistically.


_____s/ William H. Yohn Jr._____
William H. Yohn Jr., Judge